**E-Filed 9/11/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROSE WOOD,<br><br>          Plaintiff,<br><br>     v.<br><br>XEROX CORPORATION LONG-TERM<br>DISABILITY INCOME PLAN, et al.,<br><br>          Defendants. | Case Number C 05-556 JF (RS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. Nos. 22, 23] |

The parties' cross-motions for summary judgment were heard on September 1, 2006. The Court has considered the briefing of the parties as well as the oral arguments presented at the hearing. For the reasons discussed below, Plaintiff's motion will be granted and Defendants' motion will be denied.

**I. BACKGROUND**

In this ERISA action, Plaintiff Rose Wood ("Wood") seeks a determination that she is entitled to long term disability ("LTD") benefits under an insurance policy issued by Defendant Prudential Life Insurance Company of America ("Prudential") to Defendant Xerox Corporation Long-Term Disability Plan ("the Plan"). Wood's employer, Xerox Corporation ("Xerox") provides a multi-level program of disability benefits. The first five months of benefits are

Case No. C 05-556 JF (RS)
ORDER RE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

1  administered by Xerox under its self-funded short-term disability plan. Months six through
2  twenty-nine, referred to as the first phase of LTD benefits, also are self-insured by Xerox but are
3  administered by Prudential. Disability beyond twenty-nine months is insured and administered
4  by Prudential. The "Post-29 Month Plan," referred to as second phase LTD benefits, is optional
5  coverage purchased by Wood. Wood has been paid benefits under Xerox's short-term disability
6  plan and under the first phase LTD benefits plan. This lawsuit challenges Prudential's
7  determination that Wood is not entitled to benefits under the Post-29 Month Plan.

8  Wood worked for Xerox for fourteen years, fabricating prototype semiconductor chips.
9  This work required extensive use of her upper extremities: she spent approximately half her time
10 working on computers and the other half doing laboratory work involving bending over a
11 microscope and working with tweezers and other specialized equipment for up to four hours at a
12 time. While in the lab she sometimes carried five to seven pound containers of acids and poured
13 them into beakers, changed gas cylinder weighing between eighty-five and one hundred pounds
14 and liquid nitrogen tanks weighing up to 125 pounds. She earned in excess of $85,000 per year
15 in 1999.

16 **Short Term Benefits**

17 In March 1999, Wood began having pain in her right hand with a swollen middle finger.
18 She was diagnosed with carpal tunnel syndrome. She returned to work with a light duty
19 limitation, but her condition deteriorated and she went out on disability in August 1999 with a
20 diagnosis of carpal tunnel syndrome. Under the short-term disability plan, a participant is
21 considered disabled if he or she cannot perform job responsibilities because of an impairment
22 caused by injury or illness. Xerox began paying Woods short-term disability benefits without
23 dispute.

24 Wood's condition continued to worsen. In late 1999, she was referred to Dr. Raymond
25 Lagger, a neurosurgeon. Dr. Lagger noted complaints of severe headache, numbness and
26 intermittent weakness of Wood's right biceps. He diagnosed cervical spine disease, concluded
27 that Wood needed surgery, and ultimately performed a two-level anterior cervical discectomy
28 with fusion and plating of the C6 and C7 discs in January 2000. The surgery did not have a good

result. Wood reported a choking sensation resulting from scar tissue in her neck, difficulty swallowing, neck pain, headaches and numbness in her hands. At about this time benefits under Xerox's short-term disability policy were exhausted and Wood transitioned to the first phase of LTD benefits.

**First Phase LTD Benefits**

During the first seven months of LTD under Xerox's plan, disability is defined as the inability to perform one or more of the essential duties of the participant's occupation or a comparable alternative offered by Xerox or another employer. After seven months of LTD and up to twenty-nine months, disability is defined as the inability to be employed in any substantial gainful work.

In July 2000, Dr. Kevin Satow performed EMG testing and concluded that Wood had a developing median nerve neuropathy. In September 2000, Wood was examined by Dr. Henry Suckle on behalf of Xerox's worker's compensation administrator, Health International, which contracted with Prudential to administer the first phase LTD benefits. Dr. Suckle concluded that Wood was totally disabled. A post-surgery evaluation by Dr. Lagger in November 2000 concluded that Wood still suffered from carpal tunnel syndrome, neck pain and dysphagia as the result of surgery. He found that she could not perform continuous work for long periods.

On February 12, 2001, Health International had Wood examined by Dr. Lawrence Teitel. He found that the recommendations of Wood's treating physicians were "appropriate in terms of limiting her discomfort but not an absolute limitation because it is not clear that these activities will produce damage to tendons, joints, muscle or nerve." The Plan's definition of sickness and/or disability does not exclude pain and does not require that activities cause damage to tendons, joints, muscle or nerve before they qualify as limitations.

On March 15, 2001, Health International issued a "Statement of Non-Authorization" denying Wood's claim on the ground that "consulting physician did not concur." At this point no vocational analysis had been done. Health International denied Wood's appeal in August 2001 without substantive explanation.

In September 2001, Prudential sent Wood for an evaluation by a vocational counselor,

3

Sandra Richter, who concluded that Wood was not employable as a result of physical limitations. On September 18, 2001, the Administrative Law Judge presiding over Wood's social security claim found her to be disabled under the Social Security Act as a result of "the severe impairments of degenerative cervical disc disease, status-post spinal fusion with plate and screws at C5-6 and C6-7, and bilateral carpal tunnel syndrome." Health International nonetheless denied Wood's second-level appeal in November 2001, taking the position that Wood's limitations were related to discomfort. Health International did not cite to any policy language precluding disability based upon pain, and did not reference any vocational evidence.

In December 2001 and again in November 2002 Wood received epidural steroid shots for pain relief. The shots provided at most temporary relief and did not address Wood's upper extremity numbness.

In August 2002, Wood's counsel sent a letter to Xerox's benefit program manager, requesting payment of remaining benefits under the first-phase LTD plan. In October 2002 Xerox agreed to pay the remaining benefits due under the first-phase LTD plan.

**Second Phase LTD Benefits**

Wood then began the claim process for obtaining benefits under the second-phase LTD plan issued by Prudential. Under the second-phase "Post-29 Month Plan," disability is defined as follows:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> (1) Due to sickness or accidental injury, you are not able to perform, for wage or profit, the material and substantial duties of any gainful occupation for which you are reasonably fitted by your education, training or experience, or other work which the employer has made available to you.
>
> (2) You are not working at any job for wage or profit. This does not apply to a job with another employer which began prior to your Total Disability.
>
> (3) You are under the regular care of a doctor.
>
> For the purposes of Total Disability, a gainful occupation means an occupation that is or can be expected to provide you with an income at least equal to or 60% of your indexed Pre-Disability Earnings.

Post-29 Month Plan, PRU 363.

1    Wood submitted claim forms to Prudential in late 2002, along with a treating physician's statement that Wood is precluded from repetitive use of her hands and arms.  In March 2003, Prudential requested medical records from Health International.  Prudential's initial claim review on April 14, 2003 acknowledged that Wood was precluded from repetitive use of her hands and arms.  However, Prudential then omitted the upper extremity restriction, apparently based upon a review of the file conducted by a physical therapist.  Prudential sent the file for vocational review with the only limitation being no overhead work and no heavy lifting.  Prudential subsequently denied Wood's claim based upon a determination that she could perform her own occupation.

In August 2003, Wood was reexamined by Dr. Chalmers, who concluded that her condition was essentially unchanged from April 2001.  Wood appealed the denial of benefits in December 2003, presenting Dr. Chalmers' report.  Prudential again used a physical therapist to evaluate the medical record; that individual did not discuss Dr. Chalmers' 2001 evaluation, despite the doctor's finding that Wood's condition was unchanged since 2001, and concluded that Wood could perform sedentary work with her only limitations being no overhead work and no heavy lifting.

Another vocational review was performed in January 2004.  This report acknowledged that Wood could not perform her own occupation without assistance (a departure from the reasoning underpinning Prudential's earlier denial of Wood's claim for second phase LTD benefits), but concluded that Wood could perform specified other occupations.  There was no analysis of whether Wood was qualified to perform these other occupations.  For example, one such occupation was "materials scientist."  Wood has a high school education and experience only in her prior occupation; it is totally unclear from the record whether she was qualified to be a "materials scientist."  Moreover, there was no analysis whether the other occupations cited by Prudential qualified as "gainful employment" under Prudential's policy, which provided that "gainful occupation" means an occupation that provides at least sixty percent of pre-disability earnings.  A denial nonetheless was issued on the basis that Wood could perform her own or other occupations.

Wood submitted a second-level appeal in July 2004, and submitted additional medical

5

evidence including a narrative report from Dr. Kahlon and treatment records. Dr. Kahlon states impressions of chronic pain syndrome, cervical spine degenerative disc disease, cervical radiculopathy, bilateral carpal tunnel syndrome, status post C5-6 fusion, obstructive sleep apnea and history of depression. He additionally made specific findings regarding her physical limitations.

Prudential had the file reviewed by Dr. Valerie Ito. Dr. Ito acknowledged documentation consistent with carpal tunnel syndrome and pain complaints, but stated that "I do not see objective documentation in the file to support restriction of hand use." Dr. Ito's reasoning is not entirely clear, but she apparently discounted pain-based limitations. Prudential denied the claim in December 2004 on the basis that Wood could perform another (unspecified) occupation.

Wood filed the instant action in February 2005. Prudential submitted what it contends is the Administrative Record. Wood submitted additional documents generated during the claims and appeals process. There is a dispute as to the appropriate scope of the administrative record.

On March 24, the Court granted Wood's motion for partial summary judgment that the appropriate standard of review is *de novo*. The parties have filed cross-motions for summary judgment.

## II. LEGAL STANDARD

Under the *de novo* standard of review, this Court "must review *de novo* the plan administrator's decision to deny benefits." *Parra v. Life Ins. Co. of North America*, 258 F. Supp. 2d 1058, 1064 (N.D. Cal., 2003). Unless "there are genuine issues of material fact in dispute," the Court "may decide the case by summary judgment." *Id*.

If issues of material fact preclude summary judgment, the Court must conduct a bench trial on the administrative record and such other evidence as the Court admits. *Kearney v. Standard Ins. Co.*, 175 F. 3d 1084, 1094-95 (9th Cir. 1999). The burdens of proof under the *de novo* standard of review are: "Plaintiff must carry the burden to prove that she was disabled under the meaning of the plan and Defendants must carry the burden of proving the applicability of any plan coverage exclusion they seek to invoke." *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal., 2003).

## III. DISCUSSION

**A.    Nature Of Instant Proceedings**

As is discussed below, the Court concludes that on this record any reasonable trier of fact would conclude that Wood is totally disabled within the meaning of the Post-29 Month Plan, and thus that Wood is entitled to summary judgment. Even if the Court were to conclude that triable issues of material fact exist, however, the Court would grant judgment for Wood. Prior to the filing of the instant cross-motions, the Court indicated to the parties that in essence the Court's determination on the motions was going to be a bench trial on the administrative record. Neither party objected to the Court's characterization of the proceedings.

**B.    Appropriate Scope Of Administrative Record**

When Prudential submitted the administrative record, it excluded documents relating to Wood's short term benefits claim and first phase LTD benefits claim. Wood contends that these documents, which were generated during the claim process as a whole, are relevant for background and to demonstrate the history of her various conditions. The Court agrees. These are not documents that were omitted from the claims process, or after-the-fact medical reports designed to bolster the claimant's case; rather, the documents in question were generated by both sides *during* the continuing claims process as Wood sought first short-term disability benefits and then LTD benefits.

Prudential argues that the Court should consider only those documents that the plan administrator actually reviewed when making the disability determination as to second phase LTD benefits. The Court concludes that the plan administrator should have reviewed Wood's entire claim file in order to make a full and fair determination regarding her disability claim, and that the documents in question thus properly are part of the administrative record even if the plan administrator chose not to review them. Moreover, the Court concludes that Wood's entire file, including all of her medical records, are necessary to conduct an adequate *de novo* review of the benefits decision. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F. 3d 938, 944 (9th Cir. 1995) (holding that a district court may consider evidence outside the administrative record if "circumstances clearly establish that additional evidence is necessary to

1  conduct an adequate *de novo* review of the benefit decision").

2      Prudential also objects to evidence that Dr. Valerie Ito, whose opinion underpinned
3  Prudential's denial of LTD benefits, was retained for Prudential by Professional Disability
4  Associates ("PDA"). Wood submits a printout from PDA's website, which Wood contends
5  demonstrates that PDA's goal is to provide medical experts that will reduce the exposure of its
6  client insurers to disability claims. The Court concludes that the evidence regarding PDA is not
7  properly part of the administrative record and declines to consider it.

8      Prudential also objects to evidence that Xerox ultimately paid Wood the full amount of
9  benefits under the first phase LTD benefits plan, pointing out that Xerox's compromise of
10 Wood's claim is not evidence that Wood actually is disabled. The Court has taken note of
11 Xerox's payment of benefits as background only, and has not considered that compromise as
12 evidence of Wood's disability.

13 **C.    The Evidence Demonstrates That Wood Is Disabled**

14     After reviewing the policy language and all of the medical and vocational evidence in the
15 record as a whole, the Court concludes that any reasonable trier of fact would find Wood to be
16 disabled. There is no factual dispute that Wood was diagnosed with carpal tunnel syndrom in
17 1999, that she underwent spinal surgery in 2000, and that she continues to suffer pain and
18 numbness in her hands to this day. The reports of all of the physicians who actually examined or
19 treated her support her disability claim, with the exception of the report of Dr. Teitel, who
20 examined Wood at the Plan's request when she sought first phase LTD benefits. Even Dr. Teitel
21 did not find that Wood was malingering or exaggerating her symptoms. He stated that the
22 recommendations of Wood's treating physicians were "appropriate in terms of limiting her
23 discomfort but not an absolute limitation because it is not clear that these activities will produce
24 damage to tendons, joints, muscle or nerve." The policy's definitions do not, however, exclude
25 disability on the basis of pain and do not require that activities cause damage to tendons, joints,
26 muscle or nerve before they qualify as limitations.

27     Dr. Ito, the Plan's consulting doctor who did not examine Wood, did not dispute Wood's
28 diagnoses or the findings of pain, weakness and numbness documented by numerous doctors

over time. However, Dr. Ito apparently discounted Wood's pain limitations on the basis that they were not supported by objective testing. The policy's definitions do not require the type of direct test support that Dr. Ito apparently required to support Wood's pain complaints and other limitations.

The only vocational counselor who actually met with Wood, Sandra Richter, concluded that she is totally disabled. Ms. Richter met with Wood during the evaluation process for first phase LTD benefits. The two vocational reports that were generated during the evaluation process for second phase LTD benefits were prepared without meeting with Wood. One of those reports concluded that Wood could perform her own job, while the other report concluded that she could perform other occupations. Both reports were prepared based upon limitations that did *not* include limitations on use of extremities. It appears that the decision to omit limitations on use of extremities was made by a physical therapist who reviewed Wood's file but did not actually examine Wood. Neither of the vocational reports upon which Prudential relied contained any analysis of the "gainful employment" language in Prudential's policy, which provided that "gainful occupation" means an occupation that provides at least sixty percent of pre-disability earnings.

Because the Court concludes that no reasonable trier of fact could find for Prudential on this record, the Court will grant summary judgment for Wood. Even if the Court were to find that triable issues of material fact exist as to entitlement to benefits, the Court in conducting a bench trial on this record likewise would find for Wood. Accordingly, the Court will grant judgment for Wood as to entitlement to benefits. The Court will direct the parties to file briefs setting forth the amounts due to Wood, including prejudgment interest and any attorneys' fees sought.

E.   **Alternative Contractual Argument**

Wood makes an alternative argument that the Plan provided second phase LTD benefits in the event that Wood was found disabled by the Social Security Administration ("SSA"). She points to a document entitled "You & Xerox," containing the following language:

Disability Plus Coverage
This option provides the following benefits:

- If you are eligible for Social Security disability benefits because you <u>are not</u> capable of engaging in substantial and gainful work, your benefit together with Social Security and other income will equal 70% of your lost income. (See page 102 for an explanation of lost income.)

- If you are not eligible for Social Security disability benefits because the Social Security Administration determines you <u>are</u> capable of engaging in substantial and gainful work, but you meet the definition of being disabled under the plan, your benefit will be the lesser of:

    70% of your lost income, less other income benefits
    40% of your pre-disability earnings

Wood argues that this language contractually obligates Prudential to provide second phase LTD benefits in the event that an applicant is found disabled by the SSA. The Court concludes as a matter of law that the above language is not susceptible to Wood's proposed construction. When read in context, it is clear that the cited language merely explains the interplay between Social Security benefits an LTD benefits under the policy.

## IV. ORDER

(1)    Plaintiff's motion for summary judgment on the issue of entitlement to second phase LTD benefits is GRANTED and Defendants' motion for summary judgment is DENIED; and

(2)    Plaintiff shall file a noticed motion setting forth the amounts due to Wood, including prejudgment interest and any attorneys' fees sought. Briefing and argument on the motion shall be governed by the Civil Local Rules.

DATED: 9/11/06

_____
JEREMY FOGEL
United States District Judge

1  This Order was served on the following persons:

3  Rebecca Labat Crosby    crosbyr@wemed.com

4  Charles B. Perkins    cbperk@earthlink.net

5  Dennis R. Rhodes    rhodesd@wemed.com, lin@wemed.com

11

Case No. C 05-556 JF (RS)
ORDER RE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)